UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STATE OF CONNECTICUT,

                    Plaintiff,

        v.                                Case No. 3:20-CV-01555 (JCH)

EXXON MOBIL CORPORATION,

                    Defendant.

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION TO STAY EXECUTION
<u>OF THE REMAND ORDER PENDING APPEAL</u>**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Authorities .................................................................................................... ii

INTRODUCTION ........................................................................................................1

BACKGROUND ...........................................................................................................2

LEGAL STANDARD....................................................................................................4

ARGUMENT ................................................................................................................5

A.      ExxonMobil's Appeal Raises Many Serious Legal Questions About Federal
        Jurisdiction over Claims Relating to Climate Change.........................................5

        1.      Federal Common Law................................................................. 6

        2.      *Grable* Jurisdiction.................................................................... 9

        3.      Federal Officer Jurisdiction ...................................................... 10

        4.      OCSLA ..................................................................................... 11

        5.      Federal Enclaves ....................................................................... 13

        6.      Diversity Jurisdiction ............................................................... 13

B.      ExxonMobil Will Suffer Irreparable Harm Absent a Stay. ...............................14

C.      The Balance of Harms Weighs in ExxonMobil's Favor.....................................17

D.      An Administrative Stay Will Allow the Second Circuit to Consider a Stay of Its
        Own.................................................................................................................18

CONCLUSION............................................................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alfred L. Snapp & Son, Inc.* v. *Puerto Rico ex rel. Barez*,
458 U.S. 592 (1982)...........................................................................................................13

*Am. Elec. Power Co.* v. *Connecticut*,
564 U.S. 410 (2011)............................................................................................................6

*Minnesota* v. *Am. Petroleum Inst.*,
2021 WL 1215656 (D. Minn. Mar. 31, 2021) .......................................................10

*Amoco Prod. Co.* v. *Sea Robin Pipeline Co.*,
844 F.2d 1202 (5th Cir. 1988) ...................................................................................12

*Anne Arundel County* v. *BP P.L.C.*,
No. 21-01323 (D. Md. June 1, 2021), Dkt. 19.........................................................4

*Baltimore. City of Annapolis* v. *BP P.L.C.*,
2021 WL 2000469 (D. Md. May 19, 2021)........................................................3, 16

*Battle* v. *Seibels Bruce Ins. Co.*,
288 F.3d 596 (4th Cir. 2002) .......................................................................................9

*Bimber's Delwood, Inc.* v. *James*,
2021 WL 235889 (W.D.N.Y. Jan. 25, 2021).........................................................17

*BP P.L.C.* v. *Mayor & City Council of Baltimore*,
141 S. Ct. 1532 (2021)................................................................................................3, 5

*Chevron Corp.* v. *City of Oakland*,
No. 20-1089 (Jan. 8, 2021) ...........................................................................................7

*Citibank, N.A.* v. *Jackson*,
2017 WL 4511348 (W.D.N.C. Oct. 10, 2017)......................................................16

*SEC* v. *Citigroup Glob. Mkts. Inc.*,
673 F.3d 158 (2d Cir. 2012).........................................................................................4

*City of Charleston* v. *Brabham Oil Co.*,
No. 20-3579 (D.S.C. May 27, 2021), Dkt. 121.......................................................4

*City of Milwaukee* v. *Illinois*,
451 U.S. 304 (1981)..........................................................................................................7

*City of New York* v. *Chevron Corp.*,
993 F.3d 81 (2021)............................................................................................. passim

*Cooper* v. *U.S. Postal Service*,
    246 F.R.D. 415 (D. Conn. 2007)................................................................................5

*County Board of Arlington County., Virginia* v. *Express Scripts Pharmacy, Inc.*,
    996 F.3d 243 (4th Cir. 2021) ...................................................................................11

*Dalton* v. *Walgreen Co.*,
    2013 WL 2367837 (E.D. Mo. May 29, 2013) .....................................................16, 17

*United States* v. *Diaz*,
    122 F. Supp. 3d 165 (S.D.N.Y. 2015), *aff'd*, 854 F.3d 197 (2d Cir. 2017)..............11

*State of Connecticut* v. *Exxon Mobil Corp.*,
    No. X08-HHD-CV20-6132568-S (Sept. 14, 2020) .................................................3

*In re Gorsoan Ltd.*,
    2020 WL 4194822 (S.D.N.Y. July 21, 2020) ..........................................................17

*Grable & Sons Metal Products, Inc.* v. *Darue Engineering & Manufacturing*,
    545 U.S. 308 (2005), Remand Order ....................................................................8, 9

*Hiken* v. *Dep't of Def.*,
    2012 WL 1030091 (N.D. Cal. Mar. 27, 2012)........................................................15

*Humble Pipe Line Co.* v. *Waggonner*,
    376 U.S. 369 (1964)...............................................................................................13

*Isaacson* v. *Dow Chemical Co.*,
    517 F.3d 129, 137 (2d Cir. 2008)...........................................................................11

*Koscinski* v. *Farm Family Cas. Ins. Co.*,
    346 F. Supp. 3d 248 (D. Conn. 2018).....................................................................15

*Lafalier* v. *Cinnabar Serv. Co.*,
    2010 WL 1816377 (N.D. Okla. Apr. 30, 2010)......................................................16

*Latiolais* v. *Huntington Ingalls, Inc.*,
    951 F.3d 286 (5th Cir. 2020) ..................................................................................10

*Marcus* v. *AT&T Corp.*,
    138 F.3d 46 (2d Cir. 1998)........................................................................................7

*Maxcrest Ltd.* v. *United States*,
    2016 WL 6599463 (N.D. Cal. Nov. 7, 2016) ..........................................................17

*Mayor & City Council of Baltimore* v. *BP P.L.C.*,
    No. 24-C-18-004219 (Md. Cir. Ct. May 28, 2021)....................................................4

*Mohammed* v. *Reno*,
    309 F.3d 95 (2d Cir. 2002) ........................................................................5, 14

*Nken* v. *Holder*,
    556 U.S. 418 (2009) ....................................................................................4, 17

*Northrop Grumman Tech. Servs., Inc.* v. *Dyncorp Int'l LLC*,
    2016 WL 3346349 (E.D. Va. June 16, 2016) ..............................................16, 18

*Philip Morris USA Inc.* v. *Scott*,
    561 U.S. 1301 (2010) .......................................................................................16

*Providence Journal Co.* v. *FBI*,
    595 F.2d 889 (1st Cir. 1979) .............................................................................15

*Raskas* v. *Johnson & Johnson*,
    2013 WL 1818133 (E.D. Mo. Apr. 29, 2013) ...................................................17

*Republic of Philippines* v. *Marcos*,
    806 F.2d 344 (2d Cir. 1986) ...............................................................................7

*Romano* v. *Kazacos*,
    609 F.3d 512 (2d Cir. 2010) ...............................................................................9

*Sparling* v. *Doyle*,
    2014 WL 2448926 (W.D. Tex. May 30, 2014) ...................................................13

*Standard Fire Ins. Co.* v. *Knowles*,
    568 U.S. 588 (2013) ...........................................................................................8

*Suarez* v. *Saul*,
    2020 WL 5535625 (D. Conn. Sept. 15, 2020) ..........................................4, 14, 15

*Sullivan* v. *Am. Airlines*,
    424 F.3d 267 (2d Cir. 2005) ................................................................................9

*Tennessee Gas Pipeline* v. *Houston Cas. Ins. Co.*,
    87 F.3d 150 (5th Cir. 1996) ...............................................................................12

*Tex. Indus., Inc.* v. *Radcliff Materials, Inc.*,
    451 U.S. 630 (1981) ............................................................................................6

*Torres* v. *S. Peru Copper Corp.*,
    113 F.3d 540 (5th Cir. 1997) ...............................................................................9

*U.S. Bank Nat'l Ass'n* v. *Nesbitt Bellevue Prop. LLC*,
    2012 WL 2033548 (S.D.N.Y. June 5, 2012) .......................................................18

STATUTES

28 U.S.C. § 1331 ......................................................................................................3

28 U.S.C. § 1332(a) .................................................................................................3

28 U.S.C. § 1332(a)(3) ..........................................................................................13

28 U.S.C. § 1441 ......................................................................................................3

28 U.S.C. § 1442 ......................................................................................................5

28 U.S.C. § 1442(a) ...........................................................................................3, 10

28 U.S.C. § 1442(a)(1) ....................................................................................2, 5, 11

28 U.S.C. § 1442(b) .................................................................................................3

28 U.S.C. § 1443 ......................................................................................................5

28 U.S.C. § 1447(c) ................................................................................................14

28 U.S.C. § 1447(d) .............................................................................................3, 5

Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b(a) ............2, 6, 10

Outer Continental Shelf Lands Act, 43 U.S.C. § 1349(b)(1) .................................2, 3, 11

Removal Clarification Act ...................................................................................10, 11

OTHER AUTHORITIES

14C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
    § 3722.1 (4th ed. Apr. 2021) ...........................................................................8

Fed. R. App. P. 8(a)(1) .............................................................................................4

Fed. R. Civ. P. 30, 33 .............................................................................................15

## INTRODUCTION

Exxon Mobil Corporation ("ExxonMobil") respectfully requests that this Court stay execution of its June 2, 2021, Ruling on Motion to Remand ("Remand Order"), ECF No. 52, until the U.S. Court of Appeals for the Second Circuit has the opportunity to determine, in a case presenting several questions of first impression in this Circuit, whether this action should be heard in federal court.[1]  ExxonMobil additionally requests that the Court direct the Clerk of Court not to effectuate the Remand Order during the pendency of this motion.  Furthermore, if the Court decides not to grant a stay pending appeal, ExxonMobil respectfully requests that this Court grant a temporary administrative stay to preserve the status quo while ExxonMobil seeks a stay from the Second Circuit.

The Second Circuit will review all of ExxonMobil's grounds for federal jurisdiction and will likely find federal jurisdiction on one or more such grounds.  *First*, it is likely that the Second Circuit will find that this case necessarily implicates the federal common law, just as it did recently in *City of New York* v. *Chevron Corp.*, 993 F.3d 81 (2021).  In doing so, it will clarify the full extent of the well-pleaded complaint rule, the artful-pleading doctrine, and other uncertainties noted by this Court in its Remand Order, and conclude that the action is removable under the artful-pleading doctrine, *Grable* or both.  *Second*, the Second Circuit will likely find that the public-policy judgments necessary in the adjudication of the Attorney General's claims necessarily implicate a substantial question of federal law.  *Third*, the Court of Appeals will apply the plain text of the Federal Officer Removal Statute, which was amended in 2011 to remove a requirement of causation, and conclude that the Attorney General's claims are "*relating to* any act under color

---

[1]  By filing this motion, ExxonMobil does not waive any right, defense, affirmative defense, or objection, including any challenges to personal jurisdiction over ExxonMobil.

of such office." 28 U.S.C. § 1442(a)(1) (emphasis added). *Fourth*, the Second Circuit is likely to adopt the broad nexus requirement of the Fifth Circuit and determine there exists subject-matter jurisdiction under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1349(b)(1), because the Attorney General's claims have the practical effect of discouraging development on the outer continental shelf. *Fifth*, and similarly, the Court of Appeals is likely to find that the Attorney General's cause of action arises from a federal enclave, in a case of first impression for the Circuit. And, *sixth*, the Second Circuit is likely to find that the Attorney General's claims are brought not on behalf of the State of Connecticut, but on behalf of a determinable set of individual consumers, establishing diversity jurisdiction.

Furthermore, requiring this lawsuit to proceed on two parallel tracks risks irreparable harm to ExxonMobil, with the balance of the equities counseling in favor of a stay. If this case is remanded, but ultimately removed again to this Court, ExxonMobil's appeal rights could be impacted by intervening Superior Court decisions. The resources of this Court and the state court could be wasted on duplicative or ultimately unnecessary efforts to hear and resolve motions. And, in any event, the Attorney General will suffer no harm from the imposition of a stay. Accordingly, this Court should pause these proceedings to maintain the status quo while the Court of Appeals considers the serious legal issues presented to it. At a minimum, it should issue an administrative stay to permit the Second Circuit itself to decide whether a longer stay is warranted.

## BACKGROUND

On September 14, 2020, the State of Connecticut, acting through its Attorney General, filed a Complaint against ExxonMobil in the Superior Court of Connecticut identifying injuries to the state caused by climate change, accusing ExxonMobil of contributing to those injuries, and seeking relief from ExxonMobil for the costs associated with those injuries. The Complaint contained eight causes of action, all referencing the Connecticut Unfair Trade Practices Act ("CUTPA"),

Conn. Gen. Stat. § 42-110b(a).  *See State of Connecticut* v. *Exxon Mobil Corp.*, No. X08-HHD-CV20-6132568-S (Sept. 14, 2020).  On October 14, 2020, ExxonMobil timely removed the case under 28 U.S.C. §§ 1331, 1332(a), 1441, 1442(a),(b), and 43 U.S.C. § 1349(b)(1).  *See* Notice of Removal at 1 (Oct. 14, 2020), ECF No. 1.  On December 2, 2020, the Attorney General moved to remand this case to Connecticut Superior Court.  *See* ECF No. 36.  This Court granted the Attorney General's motion on June 2, 2021.  *See* ECF No. 52.  ExxonMobil filed a notice of appeal earlier today.

On May 17, 2021, the Supreme Court issued a decision in *BP P.L.C.* v. *Mayor & City Council of Baltimore*, 141 S. Ct. 1532 (2021).  In *Baltimore*, the Supreme Court held that 28 U.S.C. § 1447(d) "permit[s] a court of appeals to review any issue in a district court order remanding a case to state court where the defendant premised removal in part on the federal-officer removal statute."  *Id.* at 1536.  Prior to *Baltimore*, under § 1447(d) most appellate courts had refused to exercise jurisdiction beyond the federal-officer ground.  The scope of appellate authority governing the issues here was, as a result, limited in many ways.  In light of *Baltimore*, this Court's remand order will be subject to plenary appellate review in the Second Circuit, and potentially reversal, on one or multiple grounds that have heretofore gone essentially unreviewed by any appellate court.

Recognizing the fundamental shift in the law *Baltimore* has precipitated, other federal courts have issued stays pending the application of *Baltimore* by courts of appeals.  Just two days after the Supreme Court's ruling, for example, the federal district court in a similar lawsuit stayed proceedings pending the Fourth Circuit's decision on remand in *Baltimore*.  *City of Annapolis* v. *BP P.L.C.*, 2021 WL 2000469 (D. Md. May 19, 2021).  The district court rejected the City's arguments opposing a stay for the "simple but important reason" that the "Fourth Circuit's ruling

on remand in the *Baltimore Case* is not a foregone conclusion." *Id.* at *4. As in *City of Annapolis*, a number of ExxonMobil's jurisdictional arguments here "raise novel questions of law on which the [Second] Circuit has yet to opine." *Id.* The *Annapolis* court also rejected the argument that the alleged exigencies of climate change weigh against a stay, reasoning that "the outcome of this lawsuit cannot turn back the clock on the atmospheric and ecological processes that defendants' activities have allegedly helped set in motion. The urgency of the threat of climate change writ large is distinct from plaintiff's interest in a speedy determination of federal jurisdiction in this suit." *Id.* Proceedings in other related cases have been stayed on consent of the parties pending the further appellate review mandated by *Baltimore*. *See* Stipulation & Order Staying Proceedings, *Anne Arundel County* v. *BP P.L.C.*, No. 21-01323 (D. Md. June 1, 2021), Dkt. 19; Order, *City of Charleston* v. *Brabham Oil Co.*, No. 20-3579 (D.S.C. May 27, 2021), Dkt. 121; Order Staying Case & Pending Motions, *Mayor & City Council of Baltimore* v. *BP P.L.C.*, No. 24-C-18-004219 (Md. Cir. Ct. May 28, 2021).

## LEGAL STANDARD

District courts have the authority to stay entry of an order or judgment in proceedings pending before them. *See* Fed. R. App. P. 8(a)(1) ("A party must ordinarily move first in the district court for . . . a stay of the judgment or order of a district court pending appeal."). This includes the authority to stay remand orders pending appeal. *See, e.g.*, *Suarez* v. *Saul*, 2020 WL 5535625 (D. Conn. Sept. 15, 2020).

In deciding whether to enter a stay, courts consider the following factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *SEC* v. *Citigroup Glob. Mkts. Inc.*, 673 F.3d 158, 162 (2d Cir. 2012); *accord Nken* v. *Holder*,

556 U.S. 418, 434 (2009). "The necessary level or degree of possibility of success will vary according to the court's assessment of the other stay factors." *Mohammed* v. *Reno*, 309 F.3d 95, 101 (2d Cir. 2002). Success on the merits is not a high bar when the balance of hardships favors the moving party: "[t]ribunals may properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained." *Cooper* v. *U.S. Postal Service*, 246 F.R.D. 415, 418 (D. Conn. 2007). The forthcoming appeal meets that standard.

**ARGUMENT**

**A.    ExxonMobil's Appeal Raises Many Serious Legal Questions About Federal Jurisdiction over Claims Relating to Climate Change.**

ExxonMobil has a right to appeal from the Remand Order because it removed this case under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). *See, e.g.*, Notice of Removal ¶ 24 (Oct. 14, 2020), ECF No. 1. While normally "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal," an "order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise." 28 U.S.C. § 1447(d). Accordingly, because ExxonMobil asserted § 1442 as one of its grounds for removal—indeed, the notice of removal directed 16 pages of discussion to that ground—the "whole" of the district court's order is reviewable on appeal. *Baltimore*, 141 S. Ct. at 1538.

Because appeals from remand orders were relatively rare before *Baltimore*, neither the Supreme Court nor the Second Circuit has had the opportunity to issue rulings on many of the questions this Court's order addressed. *See* Remand Order at 32 ("[S]everal of the issues raised by ExxonMobil are novel within the Second Circuit."). Presented with this opportunity to address the law surrounding removal in the context of this case, the Second Circuit is likely to apply the

principles articulated in *City of New York* v. *Chevron Corp.*, 993 F.3d 81 (2021), and rule that removal was appropriate in this action.

### 1.   Federal Common Law

The Second Circuit is likely to conclude that the Attorney General's claims are governed by federal common law.  Federal common law applies "where the basic scheme of the Constitution so demands." *Am. Elec. Power Co.* v. *Connecticut* ("AEP"), 564 U.S. 410, 421 (2011).  In such instances, the "federal system does not permit the controversy to be resolved under state law," because "the interstate or international nature of the controversy makes it inappropriate for state law to control." *Tex. Indus., Inc.* v. *Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981).

The Second Circuit will likely extend its reasoning in *City of New York* to the claims at issue here.  In that case, the Second Circuit reasoned that the City of New York's state-law nuisance and trespass claims must arise under federal common law "because fossil fuels emit greenhouse gases—which collectively 'exacerbate global warming'"—and the City sought damages for harms allegedly caused by the emission of greenhouse gases.  993 F.3d at 91.  The reasoning applies with equal force to the Attorney General's CUTPA claims:  it is precisely because fossil fuels emit greenhouse gases that the Attorney General has filed this lawsuit. *See, e.g.*, Compl. ¶¶ 168–81 (listing flood, drought, extreme weather, and other effects as harms Connecticut has allegedly suffered due to climate change).  The *City of New York* panel reserved decision on whether its reasoning could apply in the case of a removal petition. *See* 993 F.3d at 94 (noting that "even if" other decisions rendered in the context of remand were correct, they did not conflict with holding).  With this appeal, the Circuit will be able to squarely address that question.[2]

---

2   As this Court noted, "the Supreme Court's decisions pertaining to the well-pleaded complaint rule have not squarely addressed federal common law . . . ."  Remand Order at 16.  But the Supreme Court may soon issue such

Such a decision would be consistent with the federal common-law jurisprudence of both the Supreme Court and the Second Circuit.  For example, in *Republic of Philippines* v. *Marcos*, 806 F.2d 344, 354 (2d Cir. 1986), the court noted that a state-law claim that has "necessary implications" for U.S. foreign policy "probably" arises under federal common law, suggesting that here, too, federal common law provides a basis for removal.  This observation in *Marcos* is undisturbed by *Marcus* v. *AT&T Corp.*, 138 F.3d 46, 54 (2d Cir. 1998).  There, the Second Circuit held that the Federal Communications Act does not completely preempt state law by action of statute or through the related federal common law.  *Id.*  The question here, however, is different: whether state law can even operate in climate-related suits such as this one, or whether federal law instead *must* govern, given our constitutional structure.  *See City of Milwaukee* v. *Illinois*, 451 U.S. 304, 313 n.7 (1981).

The Second Circuit has already answered that question.  *City of New York* recognized that federal common law exclusively governs claims seeking relief for injuries allegedly resulting from climate change.  In that case, the court held that "the City intends to hold the Producers liable, under New York law, for the effects of emissions made around the globe over the past several hundred years."  993 F.3d at 92.  The court then determined that a lawsuit seeking damages from such global emissions would "implicat[e] the conflicting rights of [s]tates [and] our relations with foreign nations," *id.* (quoting *Tex. Indus.*, 451 U.S. at 641), and that the suit would "upset[] the careful balance that has been struck between the prevention of global warming, . . . on the one hand, and energy production, economic growth, foreign policy, and national security, on the

---

a decision.  A petition for a writ of certiorari is currently pending before the Court presenting this question in a substantially similar context.  *See* Petition for a Writ of Certiorari at i, *Chevron Corp.* v. *City of Oakland*, No. 20-1089 (Jan. 8, 2021) ("Whether putative state-law tort claims alleging harm from global climate change are removable because they arise under federal law.").

other," *id.* at 93.  Therefore, "[s]uch a sprawling case is simply beyond the limits of state law," and

federal common law must supply the rule of decision.  *Id.* at 92.

In this analysis, it was the source of the City's harm—not the form of the cause of action—

that caused federal common law to provide the correct rule of decision.  *See* 993 F.3d at 91 ("It is

precisely *because* fossil fuels emit greenhouse gases—which collectively 'exacerbate global

warming'—that the City is seeking damages.").  Indeed, the Second Circuit reasoned that the City

's attempts to limit the scope of its lawsuit by focusing on local damages "ignores economic

reality"—a lawsuit premised on the damages caused by climate change would necessarily cause

global changes to fossil-fuel producer behavior.  *Id.* at 93.

The Circuitwill also likely agree with ExxonMobil's construction of the artful pleading

doctrine.  *See* Def.'s Br. in Opp. at 1, 16–18 (discussing exceptions to well-pleaded complaint

rule), ECF No. 37.  The artful-pleading doctrine is a corollary to the well-pleaded complaint rule,

which does not allow a plaintiff to "exalt form over substance," *Standard Fire Ins. Co.* v. *Knowles*,

568 U.S. 588, 595 (2013), and thereby "disguise [an] inherently federal cause of action."  14C

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3722.1 (4th ed. Apr.

2021).

Although this Court concluded that the artful-pleading doctrine is coextensive with the rule

of *Grable & Sons Metal Products, Inc.* v. *Darue Engineering & Manufacturing*, 545 U.S. 308

(2005), Remand Order at 23 n.10, the Second Circuit has never limited the artful-pleading doctrine

in that manner.  The Second Circuit has applied the artful-pleading doctrine as a corollary to the

well-pleaded complaint rule in a number of contexts without reference to *Grable* or its equivalents.

*See Romano* v. *Kazacos*, 609 F.3d 512, 519 (2d Cir. 2010) (cataloging uses of doctrine in cases of complete preemption and when determining existence of statutory trigger for removal).  And post-*Grable* precedent has noted only that the application of the doctrine is "not entirely clear."  *Sullivan* v. *Am. Airlines*, 424 F.3d 267, 272 n.4 (2d Cir. 2005).

Therefore, upon being presented with ExxonMobil's argument that the artful-pleading doctrine compels a conclusion that this case arises under federal common law, the Second Circuit is likely to find that the artful-pleading doctrine prevents exactly the sort of maneuvering in which the Attorney General has engaged:  pleading around the fact that its case is about climate change and its impacts, not merely deceptive advertising.  *See City of New York*, 993 F.3d at 91 ("Artful pleading cannot transform the City's complaint into anything other than a suit over global greenhouse gas emissions.").

### 2.    *Grable* Jurisdiction

This action raises multiple, substantial federal issues that are actually disputed, warranting the exercise of federal question jurisdiction under *Grable*, 545 U.S. 308 (2005).

As explained *supra*, the Second Circuit will likely hold that federal common law exclusively governs the Attorney General's claims because they implicate multiple areas our constitutional design does not allow state law to control.  That reality independently establishes *Grable* jurisdiction, since a claim "raises substantial questions of federal law by implicating federal common law."  *Torres* v. *S. Peru Copper Corp.*, 113 F.3d 540, 542 (5th Cir. 1997); *see also Battle* v. *Seibels Bruce Ins. Co.*, 288 F.3d 596, 607–08 (4th Cir. 2002).  Accordingly, even if this Court's restriction of the artful-pleading doctrine to *Grable* jurisdiction is correct, that doctrine would support federal jurisdiction here.

Beyond the question of whether the Attorney General's claims against ExxonMobil raise disputed questions of federal law through application of the Federal Trade Commission Act, the

Second Circuit will likely conclude the Attorney General's novel CUTPA prosecution here necessarily implicates questions of federal law.  As the Court observed in its Remand Order, a court applying CUTPA will be required to look to public-policy considerations to determine whether ExxonMobil's actions were unfair or deceptive when applying the relevant statutory tests. Remand Order at 20 (citing *Ulbrich* v. *Groth*, 310 Conn. 375, 409 (2013)).  Given that the public policy at issue will be the balance between energy production and environmental protection, a matter to which Congress and several federal agencies have already spoken, any discussion of the applicable public policy will necessarily implicate disputed issues of federal law.  *See City of New York*, 993 F.3d at 93 ("[T]here is a real risk that subjecting the Producers' global operations to a welter of different states' laws could undermine important federal policy choices.").

### 3.        Federal Officer Jurisdiction

ExxonMobil also has a substantial likelihood of success on the merits because this case is properly removed under the Federal Officer Removal Statute.  *See* 28 U.S.C. § 1442(a).  The Attorney General's claims relate to many actions ExxonMobil took under federal direction.

As the Court explained, "through various arrangements for the production of fossil fuels, the federal government has at times exercised a significant degree of control and direction over ExxonMobil's operations."  Remand Order at 24.  This is the "paradigmatic example" of a private party implicated by Section 1442(a).  *Id* at 23.; *see also Minnesota v. Am. Petroleum Inst.*, 2021 WL 1215656, at *9 (D. Minn. Mar. 31, 2021) (finding it "plausible" that ExxonMobil acted under direction of federal officers).

In the Removal Clarification Act of 2011, Congress provided that a strictly causal nexus was *not* required to allow removal under Section 1442(a).  *See Latiolais* v. *Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) ("By the Removal Clarification Act [of 2011], Congress broadened federal officer removal to actions, not just *causally* connected, but alternatively

*connected or associated*, with acts under color of federal office." (citing Pub. L. No. 112-51, § 2(b)(1)(A), 125 Stat. 545).  The standard is instead: whether the actions for which ExxonMobil is being sued are "for *or relating to* any act under color of such office."  28 U.S.C. § 1442(a)(1) (emphasis added).

Against this backdrop, the Second Circuit's observation in *Isaacson* v. *Dow Chemical Co.*—which preceded the Removal Clarification Act—that "non-governmental corporate defendants . . . must demonstrate that the acts for which they are being sued . . . occurred *because of* what they were asked to do by the Government," does not reflect the currently applicable law. *See* 517 F.3d 129, 137 (2d Cir. 2008) (quoted by Remand Order at 24); *see also County Board of Arlington County., Virginia* v. *Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 256 (4th Cir. 2021) (holding that "this 'connection or association' standard is broader than the old 'causal nexus' test that we abandoned after the Removal Clarification Act of 2011.").  To the extent this Court determined that it was required to follow abrogated precedent "unless and until it is overruled in a precedential opinion by the Second Circuit itself," *United States* v. *Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015), *aff'd*, 854 F.3d 197 (2d Cir. 2017), that restriction will not limit the Court of Appeals.  Applying the current text of the statute, the Second Circuit will likely conclude that jurisdiction is authorized because "Connecticut's allegations that ExxonMobil misrepresented the dangers of fossil fuels for the Earth's climate *relate to* ExxonMobil's production of fossil fuels." Remand Order at 25 (emphasis added).

### 4.    OCSLA

Jurisdiction is also properly exercised under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1349(b)(1).  There can be no dispute that ExxonMobil has engaged in substantial operations on the outer continental shelf ("OCS").  ExxonMobil and its affiliates

operate a large share of the more than 5,000 active oil and gas leases on the nearly 27 million OCS acres that the Department of the Interior administers under OCSLA.  Notice of Removal ¶ 102.

The Attorney General's claims "arise out of or in connection with" those operations because fossil-fuel production on the OCS is part of the production about which ExxonMobil allegedly misled Connecticut consumers.  This Court rejected the exercise of OCSLA jurisdiction based on its interpretation of the Complaint as seeking compensation for damages associated with deceptive practices with Connecticut consumers, rather than the manufacture or use of fossil fuels. Remand Order at 26.  ExxonMobil submits that the Second Circuit is likely to agree that this case is properly characterized and considered as an attempt to hold ExxonMobil responsible for damages allegedly caused by climate change.  In so doing, the Attorney General necessarily targets ExxonMobil's fossil fuel production activities, including on the Outer Continental Shelf.  *See City of New York*, 93 F.3d at 91.

The Second Circuit is likely to find the authority from the Fifth Circuit persuasive, as the Fifth Circuit has "more familiarity with the OCSLA than other Courts of Appeals."  Remand Order at 26.  The Fifth Circuit has explained that the nexus requirement is broad and supports removal so long as the activities on the Outer Continental Shelf contribute to the injury of which the plaintiff complaints.  *See, e.g.*, *Tennessee Gas Pipeline* v. *Houston Cas. Ins. Co.*, 87 F.3d 150, 155 (5th Cir. 1996).  Moreover, OCSLA jurisdiction is properly exercised over a dispute, like this one, that would "alter[] the progress of production activities" on the OCS, and thus "threaten[] to impair the total recovery of the federally-owned minerals from the reservoir or reservoirs underlying the OCS."  *Amoco Prod. Co.* v. *Sea Robin Pipeline Co.*, 844 F.2d 1202, 1210 (5th Cir. 1988).  The Second Circuit is thus likely to rule in ExxonMobil's favor on this basis, as well.

5.      **Federal Enclaves**

The Second Circuit can be expected to hold that this case warrants the exercise of federal enclave jurisdiction, too.  The "key factor" in evaluating federal enclave jurisdiction "is the location of the plaintiff's injury or where the specific cause of action arose."  *Sparling* v. *Doyle*, 2014 WL 2448926, at *3 (W.D. Tex. May 30, 2014).

The Attorney General's claims arise out of federal enclaves three times over.  *First*, in targeting ExxonMobil's oil and gas operations and their alleged impacts, this action necessarily sweeps in those operations that occur on military bases and other federal enclaves.  *See, e.g.*, *Humble Pipe Line Co.* v. *Waggonner*, 376 U.S. 369, 372–74 (1964).  *Second*, in alleging a variety of climate-change injuries suffered—and expected to be suffered—within Connecticut, the Complaint sweeps in harms to a variety of federal enclaves, including New London Naval Submarine Base, FCI-Danbury, and Weir Farm National Historic Park in Wilton.  *Third*, under the Attorney General's theory, its claims arise out of sales of ExxonMobil's sale of products within Connecticut, which necessarily include sales on federal enclaves.

6.      **Diversity Jurisdiction**

Finally, the Second Circuit is likely to find that removal is proper pursuant to this Court's diversity jurisdiction.  This is because it is individuals in Connecticut, not the state, that are the true parties in interest on the plaintiff's side of the case, allowing for the parties to be diverse under the language of the statute authorizing diversity jurisdiction. 28 U.S.C. § 1332(a)(3).  For the State of Connecticut to be the real party in interest, it must demonstrate a "quasi-sovereign interest" distinct "from the interests of particular private parties." *Alfred L. Snapp & Son, Inc.* v. *Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982).  And it must assert an "injury to a sufficiently substantial segment of its population."  *Id.*

Here, the Attorney General does not allege that a substantial segment of the state's population has been misled.  Rather, it argues that *specific* Connecticut consumers were allegedly misled about the risks of climate change and therefore purchased more oil and gas than they otherwise would have.  That theory is not brought on behalf of the State as a whole, but on behalf of a specific subset of consumers who were both unaware of the relationship between fossil fuel and climate change and would have changed their purchasing behavior if only they had known about that relationship.  Given the Attorney General's attempt to artfully plead around both the federal issues inherent in its complaint and the fact that Connecticut consumers are the true parties in interest, the Second Circuit will likely find diversity is a proper basis for removal, as well.

* * *

In sum, the Second Circuit will review all of ExxonMobil's asserted bases for removal, and will likely hold that this action was properly removed under one or more of them.  ExxonMobil has made a strong showing of a likelihood of success on the merits by presenting "readily contestable" and novel issues to be addressed by the Second Circuit.  *See Suarez* v. *Saul*,  2020 WL 5535625 at *1 (D. Conn. Sept. 15, 2020) (granting stay pending appeal and finding strong showing of likelihood on the merits because issue was "readily contestable as evidenced by a growing division among the federal courts of appeals.").  At the very least, ExxonMobil has presented "'serious legal questions" on appeal, which suffices to warrant a stay where, as here, "the balance of hardships favors the applicant." *Reno*, 309 F.3d at 100–01.

## B.   ExxonMobil Will Suffer Irreparable Harm Absent a Stay.

Unless this Court stays the Remand Order, ExxonMobil will be forced to litigate its appeal of the Remand Order before the Second Circuit and potentially the U.S. Supreme Court while simultaneously defending itself against the Attorney General's claims in Connecticut state court. *See* 28 U.S.C. § 1447(c).  It will suffer irreparable harm in the process.

*First*, while ExxonMobil's appeal is pending, the Connecticut state court could rule on various substantive and procedural motions, such as a motion to dismiss under local rules or a special motion to dismiss under Connecticut's anti-SLAPP statute. The state court may also decide discovery motions. And there is a risk that these motions would be decided differently than they would be in federal court. For example, the Attorney General may argue that, because Connecticut state courts adhere to different pleading standards and discovery rules than federal courts,[3] the outcome of these motions in state court could be different than in federal court.

Should the Connecticut state court address or resolve those arguments, ExxonMobil's appellate rights would be irreparably harmed. *See Suarez*, 2020 WL 5535625 at *1 (finding irreparable harm because the aggrieved party's right to seek review would be "effectively mooted" if stay was not granted); *see also Providence Journal Co.* v. *FBI*, 595 F.2d 889, 890 (1st Cir. 1979) ("Meaningful review entails having the reviewing court take a fresh look at the decision of the trial court before it becomes irrevocable."); *Hiken* v. *Dep't of Def.*, 2012 WL 1030091, at *2 (N.D. Cal. Mar. 27, 2012) (balance of hardships tipped in favor of granting stay because right to appeal an order to disclose information otherwise "would become moot").

*Second*, ExxonMobil will face a substantial burden if forced to litigating the merits of the Attorney General's claims in the Connecticut state court while its appeal is pending. Without a stay, ExxonMobil would be forced to devote substantial resources to litigating in Connecticut state court, including by preparing dispositive motions and potentially engaging in discovery. If the

---

3   As a court of this District has recognized, "Connecticut's pleading standards are less stringent than the plausibility standard in federal court." *Koscinski v. Farm Family Cas. Ins. Co.*, 346 F. Supp. 3d 248, 254–55 (D. Conn. 2018). Connecticut courts also follow more lenient discovery rules, without limitations (for example) on depositions and interrogatories. *Compare* Fed. R. Civ. P. 30, 33 *with* Conn. Prac. Book § 13-6.

Second Circuit or U.S. Supreme Court later holds that this case was properly removed, the resources devoted to preparing those motions and conducting that discovery would be wasted. Because ExxonMobil is unlikely to recover any of these sunk costs from the State, this harm is irreparable. *See Philip Morris USA Inc.* v. *Scott*, 561 U.S. 1301, 1304–05 (2010).

"District courts have been sensitive to concerns about forcing parties to litigate in two forums simultaneously when granting stays pending appeal." *Northrop Grumman Tech. Servs., Inc.* v. *Dyncorp Int'l LLC,* 2016 WL 3346349 at *4 (E.D. Va. June 16, 2016). Courts frequently grant motions to stay remand orders pending appeal precisely because of the risk of inconsistent outcomes and other burdens posed by simultaneous litigation in state and federal courts. *See, e.g.*, *City of Annapolis*, 2021 WL 2000469 at *4 ("[N]either the parties nor the court [] wishes to see months of effort rendered obsolete by the Fourth Circuit's decision in the *Baltimore Case*."); *Citibank, N.A.* v. *Jackson*, 2017 WL 4511348, at *2 (W.D.N.C. Oct. 10, 2017) (granting motion to stay remand and noting that litigation costs would be avoided); *Northrop Grumman*, 2016 WL 3346349, at *4 (entering stay because, "[i]f this order is not stayed, Plaintiff and Defendant will also both face the burden of having to simultaneously litigate the appeal before the Fourth Circuit and the underlying case in state court."); *Dalton* v. *Walgreen Co.*, 2013 WL 2367837, at *2 (E.D. Mo. May 29, 2013) (granting motion to stay the remand, reasoning that "Defendant will be irreparably harmed by the burden of having to simultaneously litigate these cases in state court and on appeal to the Eighth Circuit, as well as the potential of inconsistent outcomes if the state court rules on any motions while the appeal is pending."); *Lafalier* v. *Cinnabar Serv. Co.*, 2010 WL 1816377, at *2 (N.D. Okla. Apr. 30, 2010) ("State Farm should not be required to simultaneously respond to plaintiffs' discovery requests and pursue its request for appellate review of the Court's

remand order.  This would impose an unfair burden on State Farm.").  These authorities underscore the irreparable harm ExxonMobil faces here.

## C.    The Balance of Harms Weighs in ExxonMobil's Favor.

Although "[t]he first two factors of the traditional standard are the most critical," *Nken*, 556 U.S. at 434, the remaining factors further support staying the Remand Order pending appeal. Where, as here, the government is the opposing party, the third and fourth stay factors (*i.e.*, harm to the opposing party and the public interest) "merge" and should be considered together.  *Id.* at 435; *see also, e.g.*, *Maxcrest Ltd*. v. *United States*,  2016 WL 6599463, at *5 (N.D. Cal. Nov. 7, 2016).

The Attorney General will not be "substantially injured" if this Court enters a stay.  On the contrary, the Attorney General will *benefit* from such a stay, which would conserve its resources— financial and otherwise—by allowing it to litigate ExxonMobil's appeal without being saddled with simultaneous—and potentially unnecessary—litigation in Connecticut state court.  *See Dalton*, 2013 WL 2367837, at *2 ("[N]either party would be required to incur additional expenses from simultaneous litigation."); *see also Bimber's Delwood, Inc.* v. *James*,  2021 WL 235889, at *2 (W.D.N.Y. Jan. 25, 2021) (finding that plaintiffs would be "injured in an economic sense if they [we]re required to prepare, file, and proceed on a second amended complaint" simultaneously).  Similarly, under a stay, the Attorney General will avoid the same risk of harm from potentially inconsistent outcomes of proceedings in the Second Circuit and before this Court if removal is affirmed on appeal.  *See Raskas* v. *Johnson & Johnson*, 2013 WL 1818133, at *2 (E.D. Mo. Apr. 29, 2013).

The public interest will also be served by staying remand.  The Superior Court would be spared from wasting scarce judicial resources on adjudicating an action that may later be returned to federal court.  *See, e.g.*, *Bimber's Delwood, Inc.*, 2021 WL 235889, at *2; *In re Gorsoan Ltd.*,

2020 WL 4194822, at *8 (S.D.N.Y. July 21, 2020). And this Court's resources will be spared, too. If the Remand Order is reversed, this Court will be forced to address the effects of any interim rulings by the Connecticut state court. Among other things, the Court would need to evaluate the precedential or persuasive force of any intervening merits orders issued by the Connecticut state court, revisit the scope of any discovery orders, determine whether and to what extent any discovery that was improperly ordered may be clawed back or subjected to protective orders, and more. That amounts to a "rat's nest of comity and federalism issues" that may be obviated though the issuance of a stay. *Northrop Grumman*, 2016 WL 3346349, at *4.

**D.     An Administrative Stay Will Allow the Second Circuit to Consider a Stay of Its Own.**

In the event this Court declines to stay its Remand Order during the pendency of an appeal, ExxonMobil respectfully requests that this Court grant a temporary administrative stay to give the Second Circuit the time to consider ExxonMobil's anticipated stay motion. The Second Circuit "has noted this practice favorably," and such a step would preserve the status quo while the Circuit considers this matter. *See, e.g.*, *U.S. Bank Nat'l Ass'n* v. *Nesbitt Bellevue Prop. LLC*, 2012 WL 2033548, at *1 (S.D.N.Y. June 5, 2012) (citing *Diorinou* v. *Mezitis,* 237 F.3d 133, 138 (2d Cir. 2001)). The Attorney General will not be harmed by an administrative stay; "the risk of substantial or irreparable injury to the plaintiffs from a temporary stay of only a few days is minimal." *Nesbitt*, 2012 WL 2033548, at *1.

## CONCLUSION

For the foregoing reasons, this Court should grant the motion and stay execution of the Remand Order pending appeal.

ExxonMobil additionally requests that the Court direct the Clerk of Court not to effectuate the Remand Order during the pendency of this motion. Furthermore, if the Court decides not to

grant a stay pending appeal, ExxonMobil respectfully requests that this Court grant a temporary

administrative stay while ExxonMobil seeks a stay from the Second Circuit.

DATE:  June 8, 2021

Respectfully submitted,

EXXON MOBIL CORPORATION,

By its attorneys,

EXXON MOBIL CORPORATION

Patrick J. Conlon (*pro hac vice*, phv10908)
patrick.j.conlon@exxonmobil.com
22777 Springwoods Village Parkway
Spring, TX 77389
Tel:  (832) 624-6336

WIGGIN & DANA LLP

/s/ Kevin M. Smith
Kevin M. Smith  (ct24774)
Tadhg Dooley      (ct29364)
ksmith@wiggin.com
tdooley@wiggin.com
One Century Tower
265 Church Street
New Haven, CT 06510-7001
Tel: (203) 498-4400
Fax: (203) 782-2889

Robert M. Langer    (ct06305)
rlanger@wiggin.com
20 Church Street
Hartford, CT 06103-1250
Tel: (860) 297-3700
Fax: (860) 297-3799

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP

Theodore V. Wells, Jr. (*pro hac vice*,
phv10835)
Daniel J. Toal (*pro hac vice*, phv10907)
twells@paulweiss.com
dtoal@paulweiss.com
1285 Avenue of the Americas
New York, NY 10019-6064
Tel:  (212) 373-3000
Fax:  (212) 757-3990

Justin Anderson (*pro hac vice*, phv10837)
janderson@paulweiss.com
2001 K Street, NW
Washington, DC 20006-1047
Tel:  (202) 223-7300
Fax:  (202) 223-7420